Jordano v. Saks, case number 23-600. Got a little bit more of a complicated lineup here. So we've got, it looks like, five minutes for primary argument for the plaintiff appellants, reserving two minutes, and then we'll hear from the government for three minutes, and we'll hear from the appellees, and we'll go back to rebuttal. So, Mr. Walker, when you are ready. Thank you, your honors. May it please the court. Dan Walker from Berger Montague on behalf of the plaintiff's appellants. Plaintiff's complaint alleges that each of five major luxury fashion brand defendants agreed with Saks not to hire any of the thousands of Saks luxury retail employees as part of an overarching conspiracy to inhibit employee mobility and suppress employee compensation. These allegations state a claim for per se illegal market division under Section 1 of the Sherman Act. The district court's order dismissing plaintiff's complaint should be reversed for three reasons. First, all of plaintiff's claims are timely. Plaintiffs allege an ongoing conspiracy between Saks and the brand defendants not to compete for Saks luxury retail employees. Plaintiffs allege that this conspiracy has continually reduced job mobility for employees and suppressed compensation. Plaintiffs allege overt acts by defendants during the four-year limitations period, including repeated payment of unlawfully suppressed wages and repeated decisions not to hire or consider plaintiffs for positions to which they applied. This distinguishes this case from U.S. Air versus Sabre, where plaintiffs were challenging overcharges from payments set forth in a contract entered into between the parties before the limitations period. By contrast here, plaintiffs challenge a secret agreement between the defendants to minimize compensation for late to minimize competition for labor. That secret agreement didn't... So you say this was not a situation like in, as in U.S. Air, where the plaintiffs had previously agreed to the bad effects that they later complained about. That's correct, your honor. That they were the victims of an agreement, not participants, and they hadn't agreed to it. U.S. Air analysis said that the harm that was done was when you agreed to receive altered by the illegal conduct payments over the future. So when you received them, you had already committed to that, and those were manifestations of something that the harm occurred when you agreed to that, not when you received the payment that were destined to be altered. That's correct, your honor. Counsel, does it matter that this is a one-sided agreement? In other words, the agreement is by the brand defendants not to hire away from SACs. It's not mutual. So it sort of has the... The upshot is more or less like a non-compete imposed on the workers at SACs. The agreement is not mutual, right? Does that matter? I would say no, it doesn't matter, your honor, for a few reasons. First of all, it's not a non-compete in the sense that we normally talk about those because that's the employee signs. And it doesn't matter, I don't think, for purposes of establishing an agreement. I mean, that's not an issue on appeal here. The district court found... But in terms of the impact of the agreement on the market? Right. So in terms of the impact and the agreement on the market, I would say two things. One is the Supreme Court said in Topco that it's an illegal market division, per se illegal, when competitors on one level of the market make an agreement to minimize competition. And that's what happened here. And plaintiff's complaint explains how an agreement such as this doesn't just affect the employees who might have switched. There are... There are forces in the marketplace that spread the harm from that reduced mobility to employees across the marketplace. So for example, to put it bluntly, if there had been competition for SACs employees with the brand defendants, that would have caused SACs to raise their pay, which would have in turn caused the brand defendants to raise their pay, perhaps to prevent employees from moving or to prevent SACs from poaching those employees. The complaint alleges a widespread harm based on these agreements. In terms of your argument that we should apply the per se rule in this case to this type of agreement, does it matter that there was a vertical component, not just a horizontal agreement between SACs and the name brands, but a vertical agreement in that they leased space in the SAC stores and have this leasing type of other arrangement? No, Your Honor. Why not? This court and Apple said you look at the restraint, not the parties to the restraint. And Apple, of course, was providing an e-book platform but was still found to be part of the conspiracy between the e-book sellers. Can I finish answering your question, Your Honor? Yes. In addition, the verticality here, the restraint is among the defendants to be horizontal competitors for labor in the market. The verticality here doesn't apply to the labor market. So the dual distributor cases that the appellees cite are all cases where the vertical relationship was in the same market as the horizontal restraint. Here, we don't even know whether this horizontal restraint was part of some larger vertical relationship. Certainly not necessary to it, but it was in a separate market for leasing store space. Isn't that an inference that can be drawn? I mean, why else would they enter into this agreement if it wasn't because they were leasing space in their stores for these brand names? As the plaintiffs allege, they entered into the agreement to suppress competition to make it easier to retain labor and pay them less. What do the brand defendants get out of it? That's the idea that somehow, because it seems like all of, I mean, thinking about consideration, right? What do the brand defendants get out of this agreement? Well, the brand, I mean, part of that is subject for discovery, right? The brand defendants may have gotten a reciprocal agreement. What do you allege they... We allege they got lower wages for their wages, and that's why your clients suffered a harm? The point of the complaint, the complaint alleges that the agreement reduced competition in the marketplace, and that not only reduced competition for SAC's employees, but it reduced competition for the brand defendants as well. Maybe the brand defendants got a better deal on leasing space in the stores. Maybe this, maybe SAC said you can't participate in our program or we won't carry your goods if, in fact, you hire our employees. Which is the vertical relationship? Which is a vertical relationship, but I don't, but again, the restraint is a restraint in the market for labor, not a restraint in the market for store space or luxury goods. Thank you. We'll hear more from you in a little bit. We're going to hear now from counsel for the government. Is that Mr. Waring? Yes, your honor. All right. Good morning, may I please the court. Matthew Waring for the United States. I'll jump right in where the court left off with Mr. Walker. We agree the complaint here alleges a per se market division under section one. Let me ask you a question relating to the arguments that you made. You seem to suggest in your brief that ancillarity is always a factually intensive inquiry, and then you suggest that ancillarity can never be decided on the pleadings. Is that your position? That there could never be a situation where the court could resolve that issue on a motion to dismiss? We wouldn't say never, your honor, but rarely, and that's no different from any number of other defenses that might apply in a civil case where it's difficult for a court to find that the complaint itself establishes the facts necessary for the defense. Do you agree getting back to the per se, whether it's per se or not, that the Supreme Court has indicated that it should be confined to a narrow class of cases that the court should not apply per se if the court has any question or lacks an understanding of the economic impact that it will have? We don't know what the economic impact of applying a per se rule to these no higher agreements, particularly when there is a horizontal and a vertical relationship between the parties to the agreement. What's your position on that? Because it seems like per se is really limited to a narrow set of cases. Why did we apply it here? It is limited to certain restraints, your honor, but market allocation agreements are one such category. That is a type of restraint that has been condemned under the Sherman Act and was condemned under the common law that predated the Sherman Act. These types of agreements as the court said in Topko and reaffirmed in Palmer versus PRG of Georgia are almost always anti-competitive and so that's why they are categorically condemned. Isn't it the plaintiff's position and perhaps yours as well that it doesn't really matter whether it's subject to a per se rule or a rule of reason because the case would come out the same way under either? The plaintiff's advanced arguments in favor of their rule of reason. Our interest here is in ensuring that the court applies the per se rule in this context. The complaint states a per se claim and going back to one of the earlier questions, the presence of the vertical relationships as Mr. Walker explained isn't relevant to whether the per se rule applies to this restraint. Isn't there a case law that says that when there is a horizontal and a vertical aspect to an agreement, the per se rule should not apply? That it really should be applied to purely horizontal arrangements? But Your Honor, Apple... Is that, am I correct that that's what the case law says? No Your Honor. What case says you can have a horizontal and a vertical and apply the per se rule? Well Apple as Mr. Walker said says that. Apple says again and this is page 297 of that opinion says the Sherman Act outlaws agreements that unreasonably restrain trade. The court's focus should be on the agreement that's being challenged and the court, the Sherman Act requires evaluating the nature of the restraint rather than the identity of each party who joins and to impose it to determine whether the per se rule is properly invoked. So here again each of the agreements between Sachs and the Brand defendants is horizontal. They are concededly competitors for these luxury retail employees and they are agreeing to a restraint that affects how they will compete for these workers. That is the definition of a horizontal restraint. From the point of view of this court, if we were to find that the plaintiffs would win, that they're entitled to vacate at this point, vacate the order of dismissal, whether it's ruled under the per se rule or a rule of reason, while I understand why the government may have an argument that the per se rule should apply, but why should that affect us if we find that the easier, why do we need to make that, why is it desirable for us to make that choice if either one turns out the same way? Well, Mr. Walker's probably best positioned to answer that, but I suspect, your honor, that will, this court's decision will affect, assuming the case goes forward, how the proof comes in, you know, how plaintiffs are permitted to proceed. Obviously, if the per se theory goes forward, plaintiffs will prove their case and- Why would it affect it if we say it doesn't matter which one governs and that can be worked out as the price of the case progresses, but why should we decide difficult questions that we don't need to decide because the case would come out, because this appeal would come out the same way under either approach? Well, your honor, the district court's opinion, I think, reflects the judgment that the per se rule can't apply to this restraint, again, because of the ruling we think was erroneous, and so if the case goes back and the court hasn't made clear that the per se rule is applicable and the ancillary restraints defense isn't satisfied on the pleadings that, you know, the, I don't know what the precise procedural impact of that ruling would be going forward, but, you know, again, our view is the plaintiffs should be, they've stated a per se claim, they should be able to go forward on that claim and that, you know, it changes the nature of the evidence comes in, that would come in because the per se rule only requires proof of the agreement. That itself is enough to establish a violation of the Sherman Act, as this court said in the United States versus Coppers. All right, thank you, Mr. Waring. We'll hear from appellees. Mr. Perry. Thank you, your honors, and may it please the court. Judge LaValle, the government's policy is only to bring per se claims. The government doesn't bring rule of reason claims for no hire cases, so it is trying to make it easier to bring cases. That's why they are so intent on this determination, but Judge Kahn, no court has ever found at the judgment stage that any no hire, no poach, non-compete agreement is a per se violation of the Sherman Act. It has never been found. All of the cases cited by my friends are pleading cases or summary judgment cases, which have been litigated but not all the way to the end. When they get to the end of the road, the government loses, private plaintiffs lose. These cases have never been adjudged antitrust violations, and that matters because the default is the rule of reason. The default is the rule of reason until courts have enough experience with a particular kind of restraint to say categorically that in no circumstance can that restraint be applied in a pro-competitive manner. And we don't have that experience with no hire agreements. And Judge Merriam, to your very first question about the one-sided agreement, we certainly don't have that experience with one-sided no hire agreements in the vertical context that are part of a larger collaboration among the parties. What did the brand defendants get? My friend answered the question. They got lease rates within SAC's stores and they got access to the SAC's customers. Those are vertical considerations. And in exchange, they gave up the ability to recruit SAC's employees. That is still part of the same vertical relationship that is in the same market. It is not a different market. It is the market that my friends identified and the district court found in her opinion as the nationwide retail market for luxury retail employee. Well-trained, expensively trained, sophisticated salespeople who have knowledge of these products and the customers that purchase them. That is the market at issue. There is no market division or market allocation here in a one-sided agreement. SAC's is not allocated or divided the market from anybody. SAC's has access to everybody's employees. And more importantly, my friends both mentioned the Apple eBooks case. Apple eBooks is a horizontal conspiracy. It is a hub-spoke-rim conspiracy. It was facilitated by was around the rim. It was the agreement of the publishers among each other to compete. That is also true in the only no-hire case to reach a court of appeals, the DeLandis case from the Seventh Circuit, was a hub-spoke-rim conspiracy in which McDonald's at the hub facilitated a mutual conspiracy around the rim where every franchisee agreed bilaterally not to hire each brand-skilled laborer but no McDonald's could hire any McDonald's employees. Here there is no allegation of any arrangement between the brand defendants. There is no rim. It is only one-way agreements from SAC's to the brand defendants and even as to along the spokes, if you will, it's only a one-way agreement, not a two-way agreement. That is because, as I think Judge Kahn mentioned, this is a vertical arrangement with horizontal components. It is not purely a horizontal conspiracy. There is no case that has ever subjected a hybrid vertical-horizontal case to per se analysis and the Brubaker case, which we submitted from the Fourth Circuit, the most recent, at least that I'm aware of, court of appeals case on this, goes through an extensive analysis of why it is that vertical components, judged by the relationship between the parties, not just the restraint, makes it necessary to use rule of reason because of the potentially pro-competitive benefits. That also feeds, of course, into ancillarity under Judge Sotomayor's opinion for this court when she was on it. The question is could the restraint be reasonably necessary to a pro-competitive venture and the answer to that is in the complaint and I should pause on this. This is a motion to dismiss case. This court hears a lot of those. Usually the plaintiff stands up and points to the allegations in the complaint that the district court ignored. You didn't hear, my friends, talk about any of the allegations in the complaint. That is because as Judge Brody, Chief Judge Brody, recognized every one of the rulings is supported by the complaint. It's vertical and horizontal that's established by paragraphs 21, 27, and 28 of the complaint. Ancillarity is defined in 78, 79, 104, 62, and 89 of the complaint. We laid all this out in our brief but the pleading itself alleges the reasons for this. The brand defendants are leasing space within Saks Store. Saks is the landlord. The landlord imposes conditions on the lease and one of those conditions according to the complaint, and again this is an allegation but we're accepting it for true for purposes of this pleading, of this appeal, is that while the Prada or Laura Piana is in the Saks Store leasing the space, it can't try to get employees from Saks as a condition of the lease. That is not a horizontal agreement. That is a vertical agreement or if it is horizontal, it is ancillary to the broader collaboration, which is bringing the brand products to a broader market, right? They can sell them through their own boutiques. Laura Piana has a boutique up on Madison Avenue, but there are a lot more Saks stores around the country and allowing them to sell through Saks in boutiques and concessions brings more products to more consumers. That's an output increasing, price decreasing, or price neutral thing that is made possible by this restraint. In terms of ancillarity, because you just raised it, your opponent seemed to suggest that it's a factual inquiry and that therefore it was inappropriate for the court in this case in applying, in looking at the proper standard, in looking at the type of agreement this was to whether to apply the per se or the rule of reason analysis that ancillarity is fact intensive and it was inappropriate to grant a motion to dismiss without discovery. What's your response to that? Two answers, Judge Kahn. First, as with any allegation or any component of a case, if the complaint itself establishes the facts, then the factual nature doesn't preclude its resolution on a motion to dismiss. The question under Judge Sotomayor's opinion is whether the challenge restraint is not reasonably necessary to achieve any of the efficiency enhancing purposes of the venture, but the complaint alleges in paragraph 62 that the brand defendants have an incentive to take advantage, that's a quote, of Saks' extensive investments in training the skilled labor to sell these products. And Judge Sotomayor's opinion makes very clear that the elimination or 62, the free riding problem that is being solved, therefore, like any factual dispute or factual issue, if the complaint pleads it, they've pleaded themselves out of court, or they've pleaded themselves out of per se, right? And by the way, that just means the rule of reason applies. This doesn't mean we win the case, it means it goes into rule of reason, which is really the main dispute. The second answer, Judge Kahn, to your question is, I think because of the way the complaint is written, is why the government is here asking for a different standard than Judge Sotomayor, right? The government is proposing this very onerous, two-part standard that they think couldn't be met on this complaint. That's not the standard in this court, it's not the case standard in any court, frankly, the way they describe it. This court would have to depart from Salvino, would have to depart from Ayer, which is a majority opinion of the U.S. court, and we think it's inconsistent with DAHER, the Supreme Court's decision on ancillarity, to have stopped the extreme, unprecedented, and never adopted standard that the government proposed. Under Judge Sotomayor's articulation, Chief Judge Brody clearly had the facts alleged in the complaint, and by the way, I point to paragraph 62 as the clearest, but there are many others, and she cites them, of course, in her opinion, where the complaint here establishes ancillarity. I could take one minute on the statute of limitations before I sit down. The complaint affirmatively alleges that each of these plaintiffs, all four of them, had both knowledge of the agreement and injury, that is the refusal to be hired, before the four-year period ran. That's in paragraphs 116, 123, 144, 147, 157, and 190. So they had knowledge and injury, their claims accrued outside the four-year bar. Therefore, the face of the complaint establishes it's not timely. It then becomes the plaintiff's burden to establish a tolling doctrine. You heard my friend talk about secret agreements. Paragraph 187 alleges that this agreement was common knowledge among SACS employees, and the other paragraphs I just read say that these plaintiffs had actual knowledge. So there's no secret agreement, there's no fraudulent concealment, there's no discovery. They only have the continuing violation doctrine. And as to that, they need an overt act within the limitations period. My friend proposes two, the payment of wages. That doesn't work here because there is no wage suppression claim. There is no wage suppression claim. They only allege the suppression of wages as an effect of the mobility claim. And that's very clear from the complaint, and Judge Brody understood that. And in fact, in page one of their reply brief, plaintiffs admit that there is no conspiracy to set wages. In fact, the complaint goes further and affirmatively alleges there is no agreement as to wages. So there's only mobility. And under SABER, the reaffirmation of a previous denial, remember all of these plaintiffs were denied a position before the four years, the reaffirmation under an agreement they had actual knowledge of, of the same act, is not a new and affirmative act under SABER. And that's a definite... Is it a matter of it's a different brand defendant? Well, Your Honor, they don't allege that it was a different brand defendant as to knowledge. I don't think it would matter because they allege that the agreement is the same under their allegations, the way Judge Brody read them as to the conspiracy. They certainly haven't alleged a new and affirmative act that is a new and accumulating injury, the two-part test that this court articulated in SABER for an overt act, as to the mobility claim. So we think Judge Brody clearly understood it as to the three that she dismissed for limitations grounds. And as to the fourth, she just made an error, frankly, in splitting two periods of employment when it's a single cause of action. We pointed that out in our brief in this court. The plaintiffs had no response whatsoever, and therefore we believe have waived that point. So the court could resolve all of this on the limitations issue. But either way, they're not actionable claims and they're not timely claims and they were properly dismissed. Thank you, counsel. Thank you, Roger. Mr. Walker, you've reserved two minutes. Thank you, Your Honors. Just a couple of points. One, I want to address the verticality point again. The market for labor is not the market for goods. Alston, the court quotes, I believe, a Seventh Circuit case, perhaps it's Justice Kavanaugh's concurrence, that surely the McDonald's franchisees and McDonald's corporate could coordinate on releasing new hamburger, but they surely cannot coordinate on reducing counter workers' pay. The fact that there is a separate vertical relationship does not take away from the fact that there is a horizontal conspiracy here in the labor market. My opposing counsel here distinguished McDonald's and Apple saying that, well, those were horizontal restraints. And so they are here. McDonald's, there was also a vertical component, the franchise agreements. The court rejected that argument saying you can't argue that suppressing pay on an input is justified by increasing output in a separate market. In the Apple case, Apple and the e-book publishers had a vertical arrangement. They also had a horizontal agreement on price fixing. My opposing counsel also said that the courts need experience with this. The courts do have experience with this. The courts have long said that an agreement among competitors at the same level of the market to minimize competition is a per se unlawful market allocation. So, counsel, the clock didn't start running, but you've got about 40 seconds left. Okay. That's okay. Thank you. You can hold up cards. Yeah, I appreciate the... And the court has elsewhere said in, for example, the Supreme Court in Arizona versus Maricopa County Medical Society that the court doesn't have to have experience with the exact formulation or every exact thing being correct. What they need is experience with the category of the restraint. And there are many cases here, Brosny in the District of Connecticut, many cases outside of this circuit, where the courts have held that agreement not to poach, not to compete, not to hire workers is a horizontal market division. Thank you, Your Honor. I want to ask you the same question I asked the government before. If at this point in the case, in this appeal, if we determine that the district court's decision should be vacated, regardless of whether the complaint is viewed as appropriately per se or to be decided under rule of reason, and we then don't make that decision, but simply say, either way, the dismissal should be vacated, what difference does that make, leaving to the district court in the future to decide how the case will ultimately be decided? I don't think it makes a difference, Your Honor, going back to the district court. I think it would look very much like the Dyslandus-McDonald's opinion in the Seventh Circuit, where Judge Easterbrook said it was too early to decide per se or rule of reason. The allegations state a claim under Section 1. It needs to go back for discovery and further development of the factual record. Is there any reason, if we conclude that the case comes out the same way, in the plaintiff's favor, under either rule, is there any reason for us to keep our oar and to decide that question, whether it should be litigated under the per se or rule of reason? I don't think there's any logical or legal reason that you would need to weigh in on the per se versus rule of reason analysis now. Thank you, counsel. Thank you to all counsel.